THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN F. MULLEN, Defendant-Appellant.

Second District   No. 78-157

Opinion filed January 7, 1980.—Rehearing denied February 11, 1980.

Gary N. Topol, of Elgin, for appellant.

Theodore F. Floro, State's Attorney, of Woodstock (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, John F. Mullen, was charged by indictment filed in McHenry County on November 19, 1976, with indecent liberties with a child. Following a jury trial, defendant was convicted as charged and sentenced to 4 to 8 years imprisonment.

Defendant appeals on the grounds that: (1) the evidence was insufficient to disprove the affirmative defense raised by defendant; (2) the prosecutor's opening and closing remarks were inflammatory and unduly prejudiced the jury against the defendant; (3) the trial judge failed to give *sua sponte* a limiting instruction on evidence of prior offenses, and an instruction on the lesser-included offense of contributing to the sexual delinquency of a child, thereby denying defendant a fair trial; (4) the existence of evidence material to the defense was not disclosed until trial and the sentencing hearing, thereby denying defendant due process, and (5) the application of the indecent liberties statute was inappropriate in this case.

The indictment charged that on September 3, 1976, the defendant engaged in acts of oral and anal intercourse with the complaining witness in violation of section 11—4(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 11—4(a)(2)). It was established that the defendant was 51 years old at the time of trial.

The testimony of the complaining witness, who was a 15-year-old boy at the time of the offense, disclosed that he was delivering papers and met the defendant in the summer of 1975. The complainant had not previously had sexual intercourse with either a man or a woman. Over defense counsel's objections, complainant testified in detail concerning his subsequent sexual relationship with defendant at defendant's home over approximately the next year and a half. This sexual relationship included acts of masturbation and oral and anal intercourse. He testified defendant asked him his age the first time they met and he told him he was 14. Regarding the incident charged on September 3, 1976, complainant testified he and the defendant engaged in oral sex and anal intercourse and that he was 15 years and 9 months old on that date. Complainant testified he did not consider himself a homosexual at the time of trial, but he did at the time he was seeing the defendant.

Complainant stated that he told his grandmother that he was masturbating and the next day an appointment with a psychiatrist was arranged. Complainant testified he was admitted to Ridgeway Hospital in the latter part of August of 1976 and remained there for the next three

months. Complainant testified he had not been forced to submit to homosexual acts with the defendant and that prior to September 3, 1976, he had masturbated with a boy friend and also had homosexual contact with five other people at Zayre's in Crystal Lake during either 1975 or 1976. Complainant testified he remembered telling the defendant he was in high school but could not remember telling him that he had a car.

Complainant testified inconsistently regarding the date of his admission to Ridgeway Hospital, stating both that it was in August and that it was some time after a camping trip he had taken with his family and a friend on Labor Day weekend, September 4, 5 and 6 in 1976. He testified that he had gone to other public washrooms in Carpentersville and Elgin to make other contacts. He further testified that he told the defendant that he hoped to get a job other than delivering newspapers, and that he would be working with his father when he turned 16.

Complainant's grandmother testified regarding her close relationship with him. She noted that between the summer of 1975 and September of 1976 he had been very nervous and upset, and could not concentrate on his school work. She testified the psychiatrist diagnosed him as being on the verge of a nervous breakdown. On the doctor's recommendation, he was admitted to Ridgeway Hospital in Chicago on September 28, 1976. Complainant telephoned her from the hospital on October 14, 1976, and admitted he was involved with a man and gave her defendant's name and the location of his house. She remembered complainant telling her that the defendant had tried petting with a boy friend of his on one occasion, but that the friend became afraid. He also told her that another man, a friend of defendant's, had been involved.

Complainant's father testified that he and complainant had taken the family camper to a campground in Marengo on Thursday, September 2, and then returned home. Then he and his wife, two daughters and complainant left about 4 p.m. on Friday, the third of September, to go back to the camper for the Labor Day weekend. They returned home Labor Day evening. He stated he did not suspect complainant was involved in a homosexual relationship until he admitted to his grandmother that he was masturbating.

Complainant's mother testified that he began school in September of 1976, but was expelled due to his truancy. Her testimony corroborated that of complainant's father regarding the events of Labor Day weekend. She testified that at a meeting with McHenry County Assistant State's Attorney Haskell Pitluck, Lake-in-the-Hills police officer Kruze, herself and complainant's grandmother, complainant related in detail his sexual encounters with the defendant. In trying to pinpoint the date of the acts alleged in the indictment, they originally arrived at the date of August 29, but discovered they were using a 1975 calendar. She testified there was

never any doubt that the date they were trying to discover was the Friday before Labor Day in 1976, September 3.

The defense motion for a directed verdict was denied, and the defendant's mother was called to testify. She testified she lived with her husband in Chicago and stayed with her son every other week at his home in Lake-in-the-Hills. She stated she knew she was at her son's home on Friday, September 3, 1976, by figuring back from Thanksgiving week when she would ordinarily have gone to her son's, but stayed in Chicago instead to fix Thanksgiving dinner. She said she did not see complainant at her son's home on September 3. She said nothing unusual occurred on September 3, 1976, and the only way she could recall being at her son's home then was because of her figuring back method.

The defendant testified he lived alone but that his mother was there every other week. He was at his home with her on September 3, and left the house during the day to go grocery shopping. The defendant denied seeing complainant on September 3, 1976, and denied performing an act of "devious [*sic*]" sexual conduct upon him. He admitted he knew complainant and first found out his age after being arrested. He did not recall complainant ever telling him his age, but remembered being impressed that he was older than 16 because he spoke about being in high school, about either having or getting a car, about either going for or already having a driver's license, and about his father getting him a job at the warehouse where he worked.

On cross-examination, the defendant testified that if complainant had told him his age he would not have let him in the house. The defendant said there was nothing wrong with having a boy under 16 in his home except that he didn't want any problems, and that younger boys had vivid imaginations. He could not recall exactly when he had the discussion with complainant about high school but thought it was in 1975. The defendant also recalled that the conversations with complainant about working at the warehouse with his father, the car and the driver's license probably occurred in 1975, but not all on the same occasion. The defendant stated he helped his mother to remember she had been with him on September 3, by figuring back on the calendar according to her routine. He said he never thought it was important to ask complainant how old he was, because he always impressed him as being at least 16½, if not 17. The defendant testified he was sure he did not have sexual relations with complainant on September 3, 1976.

Defendant first contends the evidence was insufficient to disprove the affirmative defense raised by defendant's testimony that he believed complainant was over 16. The statute provides that it is an affirmative defense to the charge of indecent liberties if the accused reasonably believed the child was of the age of 16 or upwards at the time of the act

giving rise to the charge. (Ill. Rev. Stat. 1975, ch. 38, par. 11—4(b)(1).) To show his reasonable belief in complainant being over 16, defendant offered evidence of the conversations he had with him concerning his being in high school, about possibly getting a job at the warehouse where his father worked, about either having or getting a car, and about either having or getting his driver's license. Defendant could not recall when these various topics were discussed, but thought perhaps sometime in 1975. The reasonableness of defendant's belief was rebutted by complainant's testimony that defendant had asked him how old he was the first day they met, and he told him 14. Complainant also testified defendant some time later asked him when his birthday was so he could get him a birthday card. He told him it was December 8 and that he was going to be 15.

The defendant urges this court to disregard complainant's testimony due to the inconsistencies regarding the date of his admission to the hospital. Such inconsistencies, however, are to be considered only insofar as they affect the credibility of the witness, and witness credibility is a question to be resolved by the trier of fact. Such inconsistencies do not justify a court of review in setting aside a jury verdict. (*People v. Patrick* (1977), 46 Ill. App. 3d 122.) In view of defendant's highly equivocal testimony and the rebutting testimony of the complaining witness, we feel the State sustained its burden of proving the defendant guilty beyond a reasonable doubt that defendant did not reasonably believe the child was of the age of 16 or upwards at the time of the act giving rise to the charge.

■■■ Defendant next contends he was unduly prejudiced by comments made by the Assistant State's Attorney during his opening and closing arguments. The comments objected to were references made to the progression of the defendant's sexual relationship with complainant prior to the date of the offense charged, to the fact that defendant taught him the techniques of a homosexual relationship, to the fact that he was traumatized by his relationship with defendant, and to the fact that complainant would not be a homosexual if he had not met the defendant. In order to prevail on this issue, defendant must show the questionable comments, considered in light of all the evidence of guilt, were material factors in the conviction and that the verdict would have been different had the comments not been made. (*People v. Nicholls* (1969), 42 Ill. 2d 91.) Defendant contends that the practical effect of these comments was to alter the nature of the proceedings such that the defendant no longer was on trial for one offense of indecent liberties, but was forced to defend himself against the fact of a homosexual relationship with complainant and of conspiring to make him a homosexual. We cannot agree. Although the comments may be considered disparaging to the defendant, they

were either factually supported by the evidence adduced at trial, or were reasonable inferences drawn therefrom. (*People v. Arbuckle* (1979), 75 Ill. App. 3d 826.) Any potential prejudice arising from at least one of the comments—that complainant "would not be a homosexual if he hadn't met John Mullen"—was directly contradicted by the prosecutor's next statement: "I can't tell you that he wouldn't have found someone else had he not found John Mullen * * *." Since these two comments fairly well cancel each other, we find no prejudicial error resulted from the prosecutor's comment.

Defendant next claims he was denied a fair trial by the trial court's failure to give *sua sponte* a limiting instruction on evidence of prior offenses and an instruction on the lesser included offense of contributing to the sexual delinquency of a child. Although defendant failed to raise this issue in his motion for a new trial, he urges us to consider this issue in the interest of justice and we accede pursuant to Supreme Court Rule 451(c). Ill. Rev. Stat. 1977, ch. 110A, par. 451(c).

■ Considering first the limiting instruction on evidence of prior offenses, defendant is referring here to the detailed testimony given by complainant, over defendant's objection, about his sexual relationship with defendant for approximately a year and a half prior to the date of the offense charged. Defendant concedes that prior offense testimony was admissible to show the relationship and familiarity of the parties (*People v. Halteman* (1956), 10 Ill. 2d 74), but contends a substantial defect occurred when the jury was not instructed on the limited use of this evidence, and defendant was thereby denied a fair trial.

■ Although an appropriate Illinois Pattern Instruction exists (Illinois Pattern Jury Instruction, Criminal, No. 3.14 (1968) (hereinafter IPI) "Proof of Other Crimes—Intent, etc."), neither party tendered this instruction and we cannot say error occurred when the trial court decided not to take up the slack by *sua sponte* giving such an instruction. This court has held that although an admonitory instruction regarding the purpose for which evidence of other crimes was admitted is advisable, the trial court has no duty *sua sponte* to give such instruction restricting the use of proof of other offenses. (*People v. Sigman* (1976), 42 Ill. App. 3d 624, 634.) We are satisfied that the concern here that defendant's trial was not a fair one is palpably allayed by the extent to which the prosecutor covered this matter in his closing argument:

> "[Evidence of the relationship between defendant and complainant is] not being introduced for you to convict him of those acts, it's only being introduced so you understand what happened on September 3rd, of 1976. Had [complainant] come in here and sat in that witness stand and said the first thing that on September 3rd, 1976, I went to the defendant's home, I went into

his bedroom and I had oral sex and intercourse, could you have believed that? Would that have made sense? * * *.

* * *

You could not have understood what he did on September 3rd, if you did not understand what had happened before."

■ Considering next the failure to instruct on the lesser included offense of contributing to the sexual delinquency of a child, we initially note that neither of the parties tendered such an instruction to the trial court. We also preliminarily note that the general rule in Illinois is that where there is evidence presented which would support a conviction of a lesser included offense, a defendant is entitled to have the jury instructed as to that offense. (*People v. Thompson* (1977), 55 Ill. App. 3d 795, 797.) In the case at bar, defendant presented evidence that he believed complainant to be at least 16½ if not 17 years old. If the jury found the defendant's belief in complainant's age was a reasonable one, defendant could have been found not guilty of the offense charged, since he would thereby have established his affirmative defense to the offense charged. In the alternative, he could have been found guilty of the lesser included offense of contributing to the sexual delinquency of a minor which prohibits, *inter alia*, deviate sexual conduct between persons 14 or older and those under 18. Ill. Rev. Stat. 1975, ch. 38, par. 11—5(a)(2).

■ With few exceptions, Illinois courts have consistently taken the position that the trial court is under no obligation to give *sua sponte* jury instructions not requested by counsel. (*People v. Grant* (1978), 71 Ill. 2d 551; *People v. Springs* (1972), 51 Ill. 2d 418.) Elaborating on this position in his opinion in *Grant*, Mr. Justice Moran writes at pages 557-58:

"It is not enough merely to introduce relevant evidence. If a defendant does not articulate his theory in argument, and fails to tender jury instructions identifying it, he cannot reasonably expect the trial court, unaided, to divine his intent."

One of the few exceptions to the general rule that the court has no duty to issue instructions *sua sponte* is that the trial court in a criminal case, in order to afford defendant a fair trial, bears the burden of seeing that the jury is instructed on the elements of the crime charged, on the presumption of innocence and on the question of burden of proof. *People v. Parks* (1976), 65 Ill. 2d 132, 137.

Defendant cites *People v. Joyner* (1972), 50 Ill. 2d 302, as another exception to the general rule that the court has no duty to instruct *sua sponte*. The defendants in *Joyner* were prosecuted for murder. They tendered an instruction on voluntary manslaughter which was refused because it did not conform with the appropriate IPI instruction. No voluntary manslaughter instruction was given. The cause was remanded for a new trial on the basis of the court's failure to give the jury a

manslaughter instruction *sua sponte*. The supreme court felt the case was a close one factually, and that it would have been possible for the jury to find defendants guilty of murder, not guilty be reason of self defense, or guilty of manslaughter. The court found the failure of the defendants to tender the appropriate instruction was not as important with reference to the fundamental fairness of their trial as the requirement that the jury be fully and properly instructed. (50 Ill. 2d 302, 307.) In speaking of their decision in *Joyner*, the supreme court in *Parks* (cited above), at page 137, commented that the failure of the judge to instruct *sua sponte* deprived the jury of the option of finding the defendant guilty of a lesser included offense for which there was evidentiary support.

■■ *Joyner*, however, is distinguishable from the case at bar in that the defendants in that case did tender some sort of instruction on voluntary manslaughter, even though in inappropriate form. This should have alerted the trial judge to the fact that the defendants contemplated a possible verdict of voluntary manslaughter as part of their strategy. In the instant case, neither party tendered any sort of instruction on the lesser included offense of contributing to the sexual delinquency of a child. The trial judge could reasonably have assumed this failure to so tender an instruction was likewise a matter of counsel's trial strategy. This seems particularly likely in view of the stated emphasis given these two statutes. The main emphasis of the indecent liberties statute is to prevent a person 17 or older from knowing and deliberate victimization of a child's immaturity with regard to sexual matters. (Ill. Ann. Stat., ch. 38, par. 11—4, Committee Comments at 211 (Smith-Hurd 1979).) In contrast, the contributing statute is intended to preserve the State penal policy of discouraging young adults from premature ventures into sexual experiences. (Ill. Ann. Stat., ch. 38, par. 11—5, Committee Comments, at 275 (Smith-Hurd 1979).) Under the contributing statute, a person may be simultaneously perpetrator and victim, since the statute proscribes the stated sexual conduct between persons 14 or over and those under 18. No such result is possible under the indecent liberties statute because there is no overlap of ages. Considering the facts of this particular case, finding the defendant guilty of the lesser included offense of contributing likely would not have comported with the stated intent of the statute in this instance, nor with trial counsel's view as to what would constitute a desirable resolution of the case. We find the trial judge's failure to give *sua sponte* an instruction on the lesser-included offense of contributing to the sexual delinquency of a child was not a denial of defendant's right to a fair trial.

Defendant's next contention is that he was denied due process by the State's failure to provide him with the requested pretrial discovery of written or recorded statements made by complainant to his psychiatrist,

Dr. Pavkovic. He testified at trial that his psychiatrist had taken notes at the hospital during several of their conversations. Defendant raised this issue in his post-trial motion and the trial court determined that no discovery violation had occurred. Defendant contends the requested notes would have provided evidence that would have shaken complainant's credibility and that by failing to produce the notes, the State has not met its affirmative duty of diligent good faith efforts pursuant to Supreme Court Rule 412(g). (Ill. Rev. Stat. 1975, ch. 110A, par. 412(g).) Although no pretrial response of the State to defendant's motion for additional discovery is included in the report of proceedings supplied by defendant, the record of the post-trial hearing reveals that the Assistant State's Attorney had asked Dr. Pavkovic a few days before trial whether any notes existed and he said they did not. At the same post-trial hearing, it was established that information included in the defendant's presentence report, which was prepared by the McHenry County Department of Court Services, was drawn from a discharge summary and social history relative to the complainant's case which was obtained from Dr. Pavkovic.

Supreme Court Rule 412(g) requires the State to use diligent good faith efforts to make available to the defendant, upon request, "information which would be discoverable if in the possession or control of the State and which is in the possession or control of other governmental personnel." We find defendant has failed to show either that the information would have been discoverable had it been in the possession of the State or that the information was in the possession or control of other governmental personnel. Consequently, no due process violation has occurred. It was testified to at the post-trial hearing that Dr. Pavkovic's only connection with McHenry County Mental Health Department was the fact that he also worked at a mental health clinic; therefore, no governmental personnel had possession or control of the information. Further, even if the material had been in the possession and control of the State, it would not have been discoverable on the bases set forth in defendant's motion for additional discovery. The notes sought to be discovered by defendant could not be classified as set forth in his motion for additional discovery as: "(a) Any reports or statements of experts, made in connection with this case, * * *"; nor as "(b) * * * [relevant written or recorded statements] of persons whom the State intends to call as witnesses * * *"; nor as "(c) Any material or information which tends to negate the guilt of the accused as to the offenses charged * * *." Dr. Pavkovic was not acting as an expert in the case, nor was he contemplated as a witness by the State. Further, defendant has failed to show how the doctor's report would have shaken the credibility of the complaining witness since the presentence report

clearly shows the doctor's discharge summary states the psychosis he exhibited upon his admission to Ridgeway had disappeared after chemotherapy and psychotherapy were used.

Defendant's final contention is that the application of the indecent liberties statute was inappropriate under the circumstances of this case. In support, defendant cites *People v. Plewka* (1975), 27 Ill. App. 3d 553. In that case, the First District Appellate Court reduced the degree of the offense for which defendants were convicted from indecent liberties to contributing to the sexual delinquency of a child. The court based its decision on the reasons that the complainant in that case consented to the sexual acts, was sexually sophisticated, was only a few months short of 16, and neither defendant had been shown to have a tendency to sexually molest children. In the instant case, the State correctly points out that consent or lack of it is immaterial when the offense charged is indecent liberties. Further, in *Plewka*, there was nothing to suggest that the complainant was being victimized because she was sexually immature. On the contrary, the court perceived her to be sexually sophisticated, and there was nothing to suggest that such sophistication was the result of prior liaisons with either of the two defendants. In the instant case, at the beginning of the relationship with the defendant, the complainant, at age 14, was sexually inexperienced. By the time he was 15 years and 9 months old, he was well versed in the techniques of oral and anal intercourse, had sought and made contact with homosexuals other than the defendant by scouting public washrooms, and was on the verge of a nervous breakdown requiring a 3-month hospital stay. We feel these are sufficiently dissimilar circumstances so as to warrant our finding that *Plewka* provides no appreciable precedential value in this case and that the indecent liberties statute was properly applied by the authorities below.

The judgment of the circuit court of McHenry County is affirmed.

Judgment affirmed.

SEIDENFELD and WOODWARD, JJ., concur.